## THE ANSALDO SAN GIORGIO I *v.* RHEINSTROM BROTHERS CO.

No. 521. Argued February 13, 1935.—Decided March 4, 1935.

*Mr. Homer L. Loomis,* with whom *Mr. Reginald B. Williams* was on the brief, for petitioner.

*Mr. D. Roger Englar,* with whom *Messrs. Henry N. Longley* and *F. Herbert Prem* were on the brief, for respondent.

Mr. Justice Roberts delivered the opinion of the Court.

Three shipments totalling 4266 barrels of cherries in brine were loaded at Italian ports upon the S. S. Ansaldo San Giorgio I, consigned to the respondent at ports in the

United States. The cargo arrived in bad condition, due to improper stowage, and the respondent filed a libel to recover damages. Trial in the District Court resulted in an interlocutory decree for the respondent.[1] The cause was referred to a commissioner, who found that the containers and the cherries were in good condition when shipped, 162 barrels had become a total loss, and there was additional damage equivalent to a loss of 419 barrels. He computed the damages on the basis of the market value of the goods at destination on the date of arrival. The petitioner resisted any award, relying on the following clause in the bills of lading: " In the event of claims for loss, damage or short delivery the same shall be adjusted on the basis of the invoice value of the entire shipment adding expenses necessarily incurred." The proof was that, owing to favorable market conditions existing at destination, the market value of all the merchandise which remained, sound as well as damaged, exceeded the values stated in the invoices, plus freight. The commissioner held the quoted clause an invalid stipulation exempting the carrier from liability for negligence, as there was no showing that the shipper had been offered a choice of rates adjusted according to the value placed upon the goods. Upon exceptions, the district court accepted the commissioner's findings, but held the clause a reasonable and lawful agreement for measuring damages, and denied the respondent any recovery.[2] The Circuit Court of Appeals reversed the decree and affirmed the computation of damages submitted by the commissioner.[3] Though no conflict of decision in the federal appellate courts is cited, and the novelty of the question presented

---

[1] 1928 A. M. C. 109. The Circuit Court of Appeals affirmed the decree, 26 F. (2d) 1016, and this court denied certiorari, 278 U. S. 633.

[2] 3 F. Supp. 579.

[3] 73 F. (2d) 40.

would not, in the absence of general importance, move us to grant certiorari, we issued the writ [4] because the decision below is alleged to conflict with principles established by our decisions.[5]

The question presented is whether the clause appearing in the bill of lading is valid and constitutes a defense to the shipper's claim for negligent damage to a portion of the consignment.

A common carrier is answerable for loss or damage to the goods transported from any cause save the act of God or the public enemy. The measure of the shipper's recovery is normally the market value of the goods at destination, in like condition as they were when shipped, on the date when they should have arrived.[6] The carrier may exempt himself by contract from liability for the consequences of events beyond his control,[7] but he cannot contract for relief from liability for his own negligence, even though he give a special consideration for an agreement to that effect.[8]

Two so-called valuation clauses have been in frequent use. One is a true limitation agreement. It recites that a sum named in the bill of lading is the agreed value of the goods, or their value per unit or per package, in the absence of the shipper's declaration of a higher value; that the rate is fixed with reference to the specified value, and if a greater be declared a higher rate will apply; that in consideration of the rate to be charged, the carrier's liability

[4] 293 U. S. 551.

[5] See Rule 38, 5 (b) of this court.

[6] *St. Johns N. F. Shipping Corp.* v. *S. A. Companhia Geral,* 263 U. S. 119, 125, and authorities cited.

[7] *Clark* v. *Barnwell,* 12 How. 272; *York Co.* v. *Central Railroad,* 3 Wall. 107; *Bank of Kentucky* v. *Adams Express Co.* 93 U. S. 174; *Cau* v. *Texas & Pacific Ry. Co.,* 194 U. S. 427.

[8] *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 384; *Kansas City Southern Ry. Co.* v. *Carl,* 227 U. S. 639, 650; *Boston & Maine Railroad* v. *Piper,* 246 U. S. 439, 445.

for loss or damage shall be limited to the stipulated value. In case of loss or damage, this clause enures to the carrier's but not to the shipper's benefit. The latter can in no event recover more than his actual loss, but may have to take much less. The damages are computed in the usual way without reference to the stipulation, but if when so computed they exceed the agreed limit of value, no recovery of the excess may be had.[9] Such a stipulation, we have said, is not enforcible unless the shipper, for agreeing to such a limitation of the carrier's liability, receives a consideration consisting in the offer of a lower rate as against a higher rate offered for the service without such limitation;[10] or, as has been said, the rate is tied to the release.[11] Agreements of this kind are held to be reasonable and not offensive to the public policy against contracts relieving the carrier from its own negligence.[12] The agreement as to value, in consideration of carriage at the lower rate thus obtained, is held to estop the shipper from demanding damages in excess of the agreed value.

The other is a true valuation clause. It is to the effect that in event of loss or damage for which the carrier is liable, the same shall be computed on the basis of the value of the goods at the place and time of shipment. Such a provision may benefit the shipper if the goods depreciate prior to the time for delivery by the carrier, and may lessen the carrier's normal liability if they should appreciate prior to that time. This and other federal

---

[9] *Hart* v. *Pennsylvania R. Co.*, 112 U. S. 331; *Duplan Silk Co.* v. *Lehigh Valley R. Co.*, 223 Fed. 600, 603.

[10] *Hart* v. *Pennsylvania R. Co., supra; Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Pierce Co.* v. *Wells, Fargo & Co.*, 236 U. S. 278; *Boston & Maine Railroad* v. *Piper, supra; Union Pacific R. Co.* v. *Burke*, 255 U. S. 317.

[11] *Union Pacific R. Co.* v. *Burke, supra*, 321.

[12] *Hart* v. *Pennsylvania R. Co., supra*, 340; *Kansas City Southern Ry. Co.* v. *Carl, supra*, 649-50.

courts have decided a number of cases in which it appeared that a bill of lading embodied such a stipulation. In some the parties treated the clause as binding and no decision was made on the point.[13] In one case it was held to be prohibited by the Cummins Amendment to the Interstate Commerce Act,[14] but its validity in cases not controlled by that enactment was not decided. In several cases there are expressions, not necessary to the decisions, to the effect that it is a reasonable and lawful provision for measuring damages.[15] In none was there a decision that a choice of rates was essential to its validity, although there are indications of that view.[16] The contention is that, as no alternative rate applicable to liability measured by full value at destination was here afforded the shipper, the clause is void. The weight of authority in the state courts seems to be in favor of upholding the clause even though no such choice is open to the shipper.[17] There is much to be said in favor of an agreement by which the parties adopt an agreed value as a measure of recovery for loss or damage to goods not delivered by the carrier or damaged in transit. We have no occasion to determine the requirements or the validity of such a contract, as we are of opinion, that whatever is the right view as to such a valuation clause, the one here employed would be unreasonable and contrary to public policy even if supported by a valid

---

[13] *Phoenix Insurance Co.* v. *Erie & Western Transportation Co.*, 117 U. S. 312, 322; *Pennsylvania R. Co.* v. *Olivit Bros.*, 243 U. S. 574; *Gulf, C. & S. F. Ry. Co.* v. *Texas Packing Co.*, 244 U. S. 31; *The Oneida*, 128 Fed. 687.

[14] *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97.

[15] *Phoenix Insurance Co.* v. *Erie & Western Transportation Co.*, supra; *Gulf, C. & S. F. Ry. Co.* v. *Texas Packing Co.*, supra, 36; *Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.*, supra.

[16] *Western Transit Co.* v. *Leslie & Co.*, 242 U. S. 448, 453–4; *Union Pacific R. Co.* v. *Burke*, supra, 320, 321, 323.

[17] See *The Ansaldo San Giorgio I*, 3 F. Supp. 579, 581.

consideration, and cannot estop the respondent to claim damages measured according to the general rule. The contract plainly requires that if, after deduction of all loss and damage, the remaining cargo, in its then condition, is worth more at destination than the whole cargo at place and time of shipment, the carrier shall be wholly exonerated. As pointed out by the court below, if there were a short delivery of fifty cases out of a shipment of one hundred cases, but the market value of the goods delivered at the port of destination were equal to the invoice value of the hundred cases, plus freight, the carrier would pay nothing for negligent loss of half the shipment. Such an agreement is against public policy, as its effect is to relieve the carrier from the consequences of its negligence.[18]

The judgment is

*Affirmed.*

---

[18] Compare *Pearse* v. *Quebec S. S. Co.,* 24 Fed. 285, 287, 288.