SAIL AMERICA FOUNDATION and
Eagle Syndicate, Plaintiffs,

v.

M/V T.S. PROSPERITY, In rem

v.

NL BRIER SHIPPING (PANAMA)
S.A., and Bowen Shipping Co.,
Inc., Defendants.

No. 88 Civ. 1522 (DNE).

United States District Court,
S.D. New York.

Nov. 21, 1991.

Bigham Englar Jones & Houston, New York City (John E. Cone, Jr., of counsel), for plaintiffs.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City (Thomas L. Tisdale, of counsel), for defendants N.L. Brier Shipping (Panama) S.A. and M.V. T.S. Prosperity.

Chalos, English & Brown, P.C., New York City (Peter Skoufalos, of counsel), for defendant Bowen Shipping Co.

## OPINION & ORDER

EDELSTEIN, District Judge:

### Background

In 1986, various sailing syndicates competed in the Americas Cup competition in Fremantle, Australia. At the conclusion of the competition, several American sailing syndicates, including plaintiffs in this action, took steps to transport their equipment to the United States. The syndicates hired an international freight forwarder, European Ocean Freight, Inc. ("EOF"), to secure transportation of the equipment to the United States. In its efforts, EOF worked with a New York-based freight forwarder, Alfred E. Bowen, Inc. ("Bowen"), though EOF negotiated on behalf of plaintiffs at all times. Both freight forwarders hoped to consolidate the various syndicates' cargo into a single shipment in order to obtain economies of scale.

The two freight forwarders agreed that Bowen would arrange transportation for the syndicates' cargo. To this end, Bowen entered into a booking note agreement with T.J. Stevenson & Co. under which Bowen agreed to book certain on-deck and below-deck space aboard the vessel T.S. Prosperity ("TSP"), which is owned by defendant N.L. Brier Shipping, N.A. ("NLB"), for the carriage of the syndicate's cargo from Australia to the United States. In 1987, the TSP arrived in Fremantle for purposes of loading the syndicate's cargo for transport to the United States.

Bowen issued a bill of lading to plaintiffs. These bills are identical except for their description of the cargo. The bills specifically incorporate the $500 per package limitation of liability contained in the United States Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.* The bills also state that Bowen is the sole carrier and that Bowen alone will be liable as a carrier under the bill of lading. These bills provide in relevant part:

2. Definitions:

c. "Goods" as used herein means all cargo including the deck cargo described by the Shipper on Page One of this B/L, including the boxes, bundles, containers, trailers, tanks, lifts, flats, pallets or other packages, shipping units or articles of transport used to consolidate cargo, in or on which they are transported.

6. Carrier's Liability Limitation:

b. During all other periods of the Carrier's responsibility for the Goods, except as otherwise specifically provided for herein the rights and liabilities of the parties to this B/L with respect to the Goods shall be governed by the United States Carriage of Goods By Sea Act ... which shall be deemed to be incorporated herein; and all other statutes and laws compulsorily applicable to this B/L during such periods.

c. Limitation of Liability. In any event, the Carrier shall not be liable for any loss or damage to or in connection with the Goods in an amount exceeding U.S. $500 per package, unless the nature and a higher valuation of the Goods have been declared by the Merchant before shipment and inserted in this B/L. Such a declaration shall be *prima facie* of the value of the Goods, but not conclusive on the Carrier. When not repugnant to a compulsorily applicable statute or law, "package" is defined as all pieces of cargo shipped individually and not prepared in any manner for transport, and all containers as defined in ... this B/L.

e. Any provision or any part of a provision of this B/L which is repugnant to a statute or law compulsorily applicable to this B/L is void, but only for that period during which said statute to limit or deprive the Carrier of any statutory or law compulsorily applies and nothing in this B/L shall operate liberty, defense, exemption or limitation of liability.

f. The Carrier's defenses, exceptions, limits of liability, liberties and the like provided for by this B/L shall apply in all proceedings against the Carrier with respect to the Goods whether they be grounded in contract or tort.

Plaintiffs allege that the defendants are liable for damage inflicted on two pieces of their cargo that plaintiffs had placed on board the TSP. Sail America Foundation ("SAF") contends that its motorized tender boat, Betsy, incurred damages during the trip to America. The Betsy is a 64 foot long motor yacht used by SAF for various non-racing functions. Defendants stowed the Betsy on the No. 1 hatch cover on the TSP's deck. Eagle Syndicate ("Eagle") asserts that its 100–foot long sailing mast, which was part of its twelve meter yacht, also sustained damages during this trip. The mast was also carried on the TSP's deck. It is not disputed that all parties consented to transport of the cargo on the deck of the TSP. The TSP arrived in Long Beach, California with plaintiffs' cargo on April 14, 1987. Plaintiffs gave notice of the alleged damage to their cargo in May 1987 and then commenced the instant action. Discovery is complete.

Defendants N.L Brier and the TSP have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 to dismiss plaintiffs' action or, in the alternative, for partial summary judgment limiting plaintiffs' maximum recovery to $1,000. Defendant Bowen has also moved for partial summary judgment limiting plaintiffs' maximum recovery to $1,000. For purposes of these motions, the defendants will assume that plaintiffs' cargo incurred damage. Plaintiffs have cross moved pursuant to Rules 7(b) and 12(f) to strike defendants' defenses that seek to limit their liability to $1,000.

*Discussion*

"It is well settled that a court should grant a motion for summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir. 1990); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Whether an issue is genuine and material for purposes of summary judgment depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsup-

ported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court added that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

*I. Motion for Summary Judgment Dismissing Action Against NLB and TSP*

■ COGSA, if it applies to plaintiffs' cargo, provides exclusive remedies that bar all other theories of liability. Where COGSA applies, therefore, it precludes any action against a defendant that is exempt under the statute's provisions. *See St. Paul Fire & Marine Ins. Co. v. Marine Transp. Serv. Sea–Barge, Inc.,* 727 F.Supp. 1438, 1442 (S.D.Fla.1989); *Miller Export Corp. v. Hellenic Lines, Ltd.,* 534 F.Supp. 707, 710 (S.D.N.Y.1982); *National Automotive Publications, Inc. v. United States Lines, Inc.,* 486 F.Supp. 1094, 1099 (S.D.N.Y.1980); *B.F. McKernin & Co. v. United States Lines, Inc.,* 416 F.Supp. 1068, 1070–71 (S.D.N.Y.1976). Because this Court finds that COGSA applies to plaintiffs' cargo and that NLB is not subject to COGSA because it is not a "carrier" within the statute's meaning, NLB's motion for summary judgment discharging the complaint against it is granted.

*A. COGSA Applies to Plaintiffs' Cargo*

■ COGSA applies to plaintiffs' cargo by operation of law, or *ex proprio vigore.* COGSA governs every bill of lading that evidences a contract for the carriage of goods by sea in foreign commerce to or from ports in the United States. *See* 46 U.S.C.App. § 1300; *Excel Shipping Corp. v. Seatrain Int'l S.A.,* 584 F.Supp. 734, 746 (E.D.N.Y.1984). Because the Bowen bills of lading evidence a shipment from Australia to the United States, the bills of lading are subject to COGSA unless the cargo in this case is not "goods" within the statute's meaning.

■ COGSA provides that "[t]he term 'goods' includes goods, wares, merchandise and articles of every kind whatsoever, except live animals and cargo which by the contract of carriage is stated as being carried on deck and is so carried." 46 U.S.C.App. § 1301(c). Thus, COGSA does not apply to cargo carried on the deck of the vessel if the bill of lading states that the cargo will be carried on deck. *See Institute of London Underwriters v. Sea–Land Serv., Inc.,* 881 F.2d 761, 764 (9th Cir.1989); *General Motors Corp. v. Moore–McCormack Lines, Inc.,* 451 F.2d 24, 25 n. 1 (2d Cir.1971); *Saint Paul Fire & Marine Ins. Co. v. Sea–Land Serv., Inc.,* 745 F.Supp. 186, 188 (S.D.N.Y.1990); *Miller Yacht Sales, Inc. v. M/V Vishva Shobha,* 494 F.Supp. 1005, 1014 (S.D.N.Y.1980). It is undisputed, however, that the Bowen bills of lading do not specifically provide that the syndicate's cargo would be carried on deck. Accordingly, it is subject to COGSA.

■ In an attempt to escape the effect of COGSA's provisions, however, plaintiffs assert that COGSA is inapplicable because all parties intended for carriage of the cargo on deck and because the cargo was actually carried on deck. This argument is without merit. For instance, in *Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 859 (2d Cir.1985), cargo was stowed on deck although the bills of lading did not note such stowage. The court nevertheless held the shipper to COGSA's provisions because the shipper "had actual notice of the on-deck stowage option and also had notice through prior practice that on-deck stowage was usual" for the cargo in question. *Id.; see also English Elec. Valve Co. v. M/V Hoegh Mallard,* 814 F.2d 84, 89 (2d Cir.1987) (COGSA applies to cargo stowed on deck where bill of lading lacked on deck notation and shipper "had notice through prior practice that on-deck stowage was usual"); *Royal Exchange Assurance of America, Inc. v. M/V Hoegh Dene,* 1988 A.M.C. 868 (W.D.Wash.1987) (COGSA applies where shipper agreed to

stow yachts on-deck but bill of lading lacked on-deck notation). The court added that COGSA is applicable where a bill of lading does not contain an on-deck notation but where the cargo is stowed on deck pursuant to "an agreement or an established custom from which consent of the shipper for on deck stowage may be imputed." *Seguros,* 761 F.2d at 859; *see also M. Golodetz Export Corp. v. S/S Lake Anja,* 751 F.2d 1103, 1110 (2d Cir.) (courts presume that bill of lading issued pursuant to custom), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985). Only unauthorized on deck stowage deprives a carrier of COGSA protection where the bill of lading lacks an on deck notation but the carriage is stowed on deck. It is undisputed that plaintiffs consented to on deck stowage of their cargo. Therefore, COGSA applies to the Bowen bills of lading by operation of law in light of the parties' agreement, industry custom, and lack of an on deck notation on the Bowen bills of lading.

 Furthermore, COGSA applies to the parties' agreement because the parties to the Bowen bills of lading expressly incorporated the statute's provisions in the contract. *See* Bowen Bill of Lading, cl. 6(b). Where COGSA does not apply by operation of law, the parties to a bill of lading may incorporate the statute as a contractual term. *See General Motors Corp. v. Moore–McCormack Lines, Inc.,* 451 F.2d 24, 25 n. 1 (2d Cir.1971); *General Elec. Co. v. M.V. Lady Sophie,* 458 F.Supp. 620, 622 (S.D.N.Y.1978). Furthermore, when it applies as a contractual provision,

the terms of COGSA can be modified and expanded. *See Institute of London Underwriters v. Sea–Land Serv., Inc.,* 881 F.2d 761, 764 (9th Cir.199); *North River Ins. v. Federal Sea/Fed. Pac. Line,* 647 F.2d 985 (9th Cir.1981) (COGSA applies to deck cargo where bill of lading so states), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 662 (1982); *Pannell v. United States Lines Co.,* 263 F.2d 497 (2d Cir.), *cert. denied sub nom., Pannell v. The Am. Flyer,* 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959). The bills of lading extended COGSA to deck cargo. Clause 2(b) of the Bowen bills of lading defines goods as "all cargo including the deck cargo. . . ." Bowen Bill of Lading, cl. 2(b). It is apparent, then, that COGSA applies to plaintiffs' cargo.[1]

### B. NLB Is Not Subject to COGSA's Provisions

 A plaintiff may recover in personam damages under COGSA only against the carrier of the cargo. *See Pacific Employers Ins. Co. v. M/V Gloria,* 767 F.2d 229, 234 (5th Cir.1985). COGSA defines carrier to include "the owner or the charterer who enters into a contract of carriage with a shipper." 46 U.S.C.App. § 1301(a). A bill of lading is such a contract. *See* 46 U.S.C.App. § 1301(b). Accordingly, plaintiffs must establish that NLB executed a contract of carriage with the shipper.

"A contract of carriage with an owner may either be direct between the parties, or by virtue of a charterer's authority to bind the owner by signing bills of lading 'for the master.' " *In re Intercontinental Proper-*

---

1. Plaintiffs argue that if this Court finds that Bowen issued bills of lading that failed to note on deck stowage, then it must find that Bowen issued unclean bills of lading, which supposedly constitutes an unreasonable deviation and exempts the shipper from COGSA's provisions. This argument is without merit. "A deviation results when a vessel wanders or strays from the customary course of the voyage." *General Elec. Co. Int'l Sales Division v. S/S Nancy Lykes,* 706 F.2d 80, 84 (2d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983). The deviation doctrine is a common law invention that prevents a carrier from invoking contractual liability limitations when the carrier deviates from the usual course. *See Thyssen, Inc. v. S/S*

*Fortune Star,* 777 F.2d 57, 63–65 (2d Cir.1985). Some courts have extended the doctrine, under the term quasi-deviation, to the unauthorized on deck stowage of cargo. *See Saint Johns N.F. Shipping Corp. v. S.A. Companhia Geral Commercial,* 263 U.S. 119, 44 S.Ct. 30, 68 L.Ed. 201 (1923). It is undisputed, however, that the parties in this action agreed to the stowage of plaintiffs' cargo on deck. Accordingly, such stowage is not a quasi-deviation. Furthermore, the Second Circuit has counseled against extending the quasi-deviation doctrine. *See Iligan Integrated Steel Mills, Inc. v. S.S. John Weyerhaeuser,* 507 F.2d 68, 72 (2d Cir.1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975).

*ties Management, S.A.,* 604 F.2d 254, 208 n. 3 (4th Cir.1979). It is not disputed that NLB and plaintiffs never directly executed a contract for carriage.

■ Furthermore, plaintiffs put forth no evidence that Bowen signed a bill of lading on NLB's behalf and with NLB's authority. When a bill of lading is signed by the charterer or its agent "for the master," the shipowner is liable only if the signor had authority to bind the shipowner. *See Pacific Employers,* 767 F.2d at 237; *Dempsey & Assoc., Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1015 (2d Cir.1972); *Centennial Ins. Co. v. M.V. Constellation Enter.,* 639 F.Supp. 1261, 1265 (S.D.N.Y.1986).

In this case, defendants have put forth evidence that Bowen did not sign the bill of lading with NLB's authority. Bowen chartered the TSP from T.J. Stevenson & Co. While Stevenson issued bills of lading to Bowen and Bowen issued the bills of lading to plaintiffs, neither the vessel nor its owners received copies of either the Bowen or Stevenson bills of lading. The Bowen bills of lading were signed by Anthony D'Aria, a Bowen shipping employee who is unaffiliated with NLB. In addition, none of the vessel's officers were employed by the vessel owner, which suggests that they had no authority to authorize the issuance of bills of lading on the owner's behalf. Moreover, Bowen's president was not aware of any authorization to sign bills of lading on behalf of the master. Finally, neither Bowen, SAF, Eagle or EOF ever conferred with the vessel owner or its agent.

Plaintiffs do not contest these facts. They merely assert that because the Bowen bill of lading was signed "for the master," some sort of authorization existed for the signature. This lone conclusory assertion cannot defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Francis v. Coughlin,* 891 F.2d 43, 47 (2d Cir.1989).

Moreover, plaintiff has the burden of proving that the vessel owner or master authorized the issuance of the bills of lading on its behalf. *See Centennial Ins.,* 639 F.Supp. at 1265. A "court may grant summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The Court added that in such a case, the movant must show only that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. Plaintiffs have failed to assert any fact, or establish the existence of any factual dispute, that could successfully prove this element of its case. Accordingly, NLB's motion for summary judgment dismissing the complaint against it is granted.

The vessel TSP, however, may still be liable in rem. In *Cactus Pipe & Supply Co. v. M/V Montmartre,* 756 F.2d 1103, 1113 (5th Cir.1985), the court addressed the liability of a vessel in rem where the vessel's owner is not liable in personam. The court stated that

> the vessel may be held liable even in the absence of the liability, in personam, of the vessel owner.... [Where] bills of lading [are] issued and the vessel sails with the goods on board, ... a settled maritime principle ... sweeps away as immaterial any question of the authority of the issuer of the bills of lading to hold the ship liable in rem for loss or damage to the cargo carried. When cargo has been stowed on board the vessel and bills of lading are issued, the bills of lading become binding contracts of the vessel in rem upon the sailing of the vessel with the cargo. The sailing of the vessel constitutes a ratification of the bills of lading.

*Id.* Accordingly, TSP's motion for summary judgment is denied.

## II. Defendants' Motion to Limit Liability

■ As previously noted, COGSA applies to the Bowen bills of lading. COGSA limits a carrier's and a ship's liability for goods in transportation to $500 per package or, for goods not shipped in packages, $500 per customary freight unit ("CFU"). *See* 46 U.S.C.App. § 1304(5). If the Betsy

and the mast were either packages or customary freight units, the defendants' liability may not exceed COGSA's $500 per package or CFU amount.

The Second Circuit has defined a COGSA package as "a class of cargo, irrespective of size, shape or weight to which some packaging in preparation for transportation has been made, which facilitates handling but which does not necessarily conceal or completely enclose the goods." *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir.1968). The bill of lading definitions are a primary consideration of what constitutes a COGSA package. *See Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 485 (2d Cir.1985), *cert. denied*, 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986); *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam*, 759 F.2d 1006, 1012 (2d Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985).

Clause 6(c) of the Bowen bills of lading defines a package as "all pieces of cargo shipped individually and not prepared in any manner for transport, and all containers as defined in Clause 2(d) of this B/L." Bowen Bill of Lading, cl. 6(c). Clause 2(d) defines containers as "all boxes, trailers, tanks, bundles, lifts, flats, pallets or other packages, shipping units or articles of transport used to consolidate the Goods in or which the Goods are transported." Bowen Bill of Lading, cl. 2(d).

It is undisputed that substantial packaging was applied to the mast. The mast was wrapped in burlap and plastic, and had wooden crates surrounding it in four locations. In addition, wooden chocks or braces were lashed around the mast. Because clause 6(c) excludes from the definition of a package all cargo prepared in some manner for transport unless it is a container, the mast is only a package if it is a container as defined in clause 2(d).

It is unclear to this Court, however, whether the mast and the Betsy fall within the contractual definition of a container. Plaintiffs assert, for instance, that the mast cannot be considered a box, trailer, tank, bundle, lift, flat, or pallet. Plaintiffs

also contend that the rest of clause 2(d) includes items used to consolidate other goods, but does not include the consolidated item. Defendants, on the other hand, note that the bills of lading list the mast as a package. "Entries on the bill of lading are ... important evidence of the intent of the parties to the shipping contract and the declaration on the bill may bind a shipper even when the contents of the shipment diverge from the description on the bill." *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam*, 759 F.2d 1006, 1012 (2d Cir.1985) (citations omitted). Furthermore, Bowen's president asserted that the term containers includes cargo prepared for transport. Defendants also claim that because a container includes items used to consolidate goods, the mast in its packaging is also a container. A similar dispute surrounds whether the Betsy falls within the bills of lading definition of package or container.

Such a dispute over contractual interpretation and intent of the parties counsels against a grant of summary judgment. *See National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 205 (2d Cir.1989). Accordingly, this Court is constrained to deny defendants' motion for partial summary judgment in which they seek to limit their liability to $1,000. Because this Court has denied defendants' motion to limit liability, it does not address plaintiffs' argument that they did not receive a fair opportunity to declare a higher value for carriage, which if true would preclude defendants from limiting their liability. Similarly, this Opinion does not address whether defendants are precluded from asserting COGSA's liability limitation if defendants' tortious and criminal conduct caused the damage to plaintiffs' cargo.

### Conclusion

Defendant N.L. Brier's motion for summary judgment dismissing it as a party to this action is granted. Defendant T.S. Prosperity's motion for summary judgment dismissing the vessel as a party is denied. All defendants' motions for partial summary judgment seeking to limit their total

liability to $1,000 are denied. Plaintiffs' motion to strike defendants' defenses relating to limitation of liability is denied.

SO ORDERED.