**INTERNATIO, INC., Plaintiff-Appellee,**

v.

**M. S. TAIMYR, her engines, boilers, tackle, etc., and Wilh. Wilhelmsen and Barber Lines, A/S, Defendants-Appellants.**

**No. 894, Docket 78–7642.**

United States Court of Appeals, Second Circuit.

Argued April 19, 1979.

Decided July 9, 1979.

Chester D. Hooper, New York City (Haight, Gardner, Poor & Havens, New York City, Nicholas H. Cobbs and M. E. DeOrchis, New York City, of counsel), for defendants-appellants.

John T. Kochendorfer, New York City (Bigham, Englar, Jones & Houston, New York City), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, SMITH, Circuit Judge, and OWEN, District Judge.*

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment for $48,650 plus interest entered in the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., Judge, in favor of an importer of cocoa against the owner and charterer of the ship on which a damaged shipment of cocoa beans was carried. Liability is conceded, but the amount of damages remains in issue. We reverse and remand for entry of a judgment in accordance with this opinion.

Internatio, Inc. is engaged in international commodities trading. On June 23, 1976, Internatio purchased 250 metric tons (the equivalent of 4,000 bags) of Nigerian raw cocoa beans from Henry Stephens & Sons (London) Limited ("Stephens") for delivery between December 1976 and February 1977 to ports in the United Kingdom at a price of $.81152 per pound. On July 1, 1976, Internatio contracted to deliver 300 metric tons of cocoa to M & M Mars, Inc. ("M & M") in Europe during the same time period at a price of $.8572 per pound. The contract for sale to M & M later was modified to call for delivery of 250 metric tons "ex dock" Philadelphia at an increased price of $.9172, which reflected the added freight

* Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

charge for delivery to the United States. Internatio then arranged to have delivery of its purchase from Stephens made in Philadelphia rather than in the United Kingdom, also with an adjustment in price.

On January 29, 1977, 4,000 bags of cocoa beans were delivered on behalf of Stephens at Lagos, Nigeria for transportation to Philadelphia on the M.S. TAIMYR. The TAIMYR was owned by Wilh. Wilhelmsen and chartered by Barber Lines, A/S (both of which are Norwegian business entities doing business in New York through their agent, Barber Steamship Lines), the latter of which issued a clean bill of lading for the 4,000 bags. Upon arrival of the ship in Philadelphia on February 28, 1977, the following loss was noted: 128 bags totalling 17,775 pounds were missing; 48 bags were torn, resulting in a loss of 1,443 pounds; and 152 bags were stained, resulting in a loss of 4,236 pounds in the subsequent reconditioning process. The market price of cocoa beans in Philadelphia on the day of arrival was $2.01 per pound.

Internatio invoked the admiralty jurisdiction of the district court and sought recovery of $48,650.20 from the M.S. TAIMYR, Wilh. Wilhelmsen and Barber Lines, A/S. This amount included lost market value of 23,454 pounds of cocoa at the February 28 market price of $2.01 per pound, plus reconditioning and other expenses totalling $1,507.66. The defendants concede liability, but contend that Internatio is entitled to only $22,933.87, based on the contract price of $.9172 for resale to M & M, plus the expenses.

The rights of the parties to the contract of carriage are governed by the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–15. Section 1304(5) provides that "[i]n no event shall the carrier be liable for more than the amount of damage actually sustained." This comports with the long-established principle of contract law stated by Mr. Justice Holmes in *Chicago, Milwaukee & St. Paul Railway v. McCaull-Dinsmore Co.*, 253 U.S. 97, 100, 40 S.Ct. 504, 504–505, 64 L.Ed. 801 (1920):

> The rule of the common law is . . . an embodiment of the plain fact that the actual loss caused by a breach of a contract is the loss of what the contractee would have had if the contract had been performed . . . . .

Application of this principle and the statute compels the result urged by the defendants.

■ Internatio contends, however, that the district court properly awarded it the market value of the cocoa. It relies on *Ansaldo San Giorgio I v. Rheinstrom Brothers*, 294 U.S. 494, 496, 55 S.Ct. 483, 484, 79 L.Ed. 1016 (1935), where the Court said, "The measure of the shipper's recovery is normally the market value of the goods at destination, in like condition as they were when shipped, on the date when they should have arrived." But the Court there was not establishing a special rule of damages for maritime cases, in derogation of the ordinary contract rule. It merely was indicating the way in which a shipper's loss could "normally" be measured. Such a method of measurement is not an end in itself, for as the Court had stated in *Illinois Central Railroad v. Crail*, 281 U.S. 57, 64–65, 50 S.Ct. 180, 181, 74 L.Ed. 699 (1930):

> The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to if, for special reasons, it is not exact *or otherwise not applicable.* [Emphasis added.]

■ The market value measure is not applicable here because it would result in a recovery greater than the loss suffered. *See Dixie Plywood Co. v. S.S. Federal Lakes*, 404 F.Supp. 461, 466 (S.D.Ga.), *aff'd mem.*, 525 F.2d 691 (5th Cir. 1975), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798 (1976). Internatio conceded in its post-trial memorandum that "if defendants had delivered the entire shipment plaintiff would only have received the ex dock price," *i. e.*, $.9172 per pound. The loss of this price for the undelivered cocoa was the only loss proved by Internatio. If, as might have been expected in light of the substantial increase in the price of cocoa between the time of contracting and the time of delivery, M & M had *required* Internatio to enter the market to purchase cocoa to make up the deficiency, then Internatio would have been entitled to damages meas-

ured by the existing market price. But the district court found, and the evidence clearly showed, that "plaintiff was unable to prove that it obtained a replacement for this cocoa shipment" and that "[a]pparently Mars did not hold plaintiff liable for any damages."[1] We cannot agree with the district court's conclusion that M & M's failure to insist on full performance is "purely fortuitous, and does not limit the rights of the consignee against the carrier." This "fortuitous" occurrence limited the actual loss incurred by Internatio and consequently must limit its recovery to the additional amount that it would have received had it delivered the entire order to M & M.

The judgment is reversed and remanded for entry of a judgment in accordance with this opinion.[2]

1. Internatio insisted at trial that it must have made up the deficiency in some manner, either in merchandise (by giving M & M a portion of Internatio's next cocoa shipment to Philadelphia), in cash (by allowing M & M a price discount on its next order) or in some other unspecified way. But counsel conceded in the district court that Internatio had no record of what, if anything, it had done in this regard. Since the burden of proof of loss rests on the plaintiff, it must be assumed therefore that, although M & M did not pay for the undelivered cocoa, it received no additional compensation in reimbursement for the market price increase.

2. The defendants contend that Internatio's damages, properly measured, total $22,933.87. Our calculation, using the figures supplied by the parties, indicates that the value of the 23,-454 pounds of cocoa at $.9172 per pound was $21,512.01. When this value is added to the apparently uncontested reconditioning and other expenses of $1,507.66, the total equals $23,-019.67. We leave the resolution of this minor discrepancy to the district court.